UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

In Re 2025 UPMC Subpoena

Civil Action No. 2:25-mc-01069-CB

**REPLY IN SUPPORT OF**
**MOTION TO QUASH SUBPOENA DUCES TECUM**

Jill E. Steinberg* (PA 82127)
J. Chesley Burruss* (PA 331521)
Kevin M. Hayne* (NY 5967526)
Elizabeth A. Lilly* (PA 336185)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
steinbergj@ballardspahr.com
burrussc@ballardspahr.com
haynek@ballardspahr.com
lillye@ballarspahr.com

Colin J. Callahan (PA 328033)
FLANNERY GEORGALIS
436 Seventh Avenue
Koppers Building, Ste. 2100
Pittsburgh, PA 15219
412-213-4246
ccallahan@flannerygeorgalis.com

Mary M. McKenzie* (PA 47434)
Daniel Urevick-Ackelsberg* (PA 307758)
Meghan Binford* (PA 321212)
Olivia Mania* (PA 336161)
PUBLIC INTEREST LAW CENTER
2 Penn Center
1500 JFK Blvd., Suite 802
Philadelphia, PA 19102
267-546-1316
mmckenzie@pubintlaw.org
dackelsberg@pubintlaw.org
mbinford@pubintlaw.org
omania@pubintlaw.org

*Counsel for Movants*
**Pro hac vice*

## TABLE OF CONTENTS

**Page**

ARGUMENT .................................................................................................................................. 1

    I.    Movants Have Standing to Move to Quash the Subpoena .......................................... 1

    II.   Sovereign Immunity Provides No Shield to the Government's Incursion .................. 4

    III.  Movants are not Time-barred from Challenging a Subpoena They Have Never Seen .............................................................................................................................. 5

    IV.  DOJ's Declaration Provides no Cover for its Bad Faith ............................................ 6

    V.   *Westinghouse* Applies and Counsels Quashing the Subpoena .................................... 9

    VI.  The Court has the Inherent Power to Quash a Subpoena and to Protect the Rights of Third Parties ................................................................................................ 10

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In Re: Administrative Subpoena No. 25-1431-019*,
   1:25-mc-91324 (D. Mass. Sep. 1, 2025)...................................................................................9

*Am. C.L. Union v. Clapper*,
   785 F.3d 787 (2d Cir. 2015)......................................................................................................2

*Bah v. United States*,
   91 F.4th 116 (3d Cir. 2024) .......................................................................................................5

*Buckman v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001)..................................................................................................................7

*C.N. v. Ridgewood Bd. of Educ.*,
   430 F.3d 159 (3d Cir. 2005)....................................................................................................10

*F.D.I.C. v. Wentz*,
   55 F.3d 905 (3d Cir. 1995)......................................................................................................10

*F.D.I.C. v. Meyer*,
   510 U.S. 471 (1994)..................................................................................................................5

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010)..................................................................................................................1

*G.L. v. Ligonier Valley Sch. Dist. Auth.*,
   802 F.3d 601 (3d Cir. 2015)......................................................................................................3

*Gillette v. Warden Golden Grove Adult Corr. Facility*,
   109 F.4th 145 (3d Cir. 2024) .....................................................................................................4

*In re Grand Jury*,
   111 F.3d 1066 (3d Cir. 1997)................................................................................................1, 2

*In re Grand Jury*,
   619 F.2d 1022 (3d Cir. 1980)....................................................................................................4

*In re Grand Jury Investigation*,
   445 F.3d 266 (3d Cir. 2006)......................................................................................................5

*In re Grand Jury Matter*,
   802 F.2d 96 (3d Cir. 1986)........................................................................................................1

*C.N. ex rel. J.N. v. Ridgewood Bd. of Educ.*,
  319 F. Supp. 2d 483 (D.N.J. 2004) ...................................................................................10

*Jaffee v. United States*,
  592 F.2d 712 (3d Cir. 1979) .............................................................................................4

*Johnson v. Folio*,
  528 F. Supp. 2d 548 (E.D. Pa. 2007) ................................................................................4

*Lane v. Pena*,
  518 U.S. 187 (1996) ..........................................................................................................5

*Lutter v. JNESO*,
  86 F.4th 111 (3d Cir. 2023) ..............................................................................................1

*Penelow v. Janssen Prods. LP*,
  No. 25-1818 (3d Cir. Aug. 27, 2025) ............................................................................7, 8

*Ponsford v. United States*,
  771 F.2d 1305 (9th Cir. 1985) ..........................................................................................5

*Rivera v. Lehigh Cnty.*,
  No. 13-CV-04748, 2015 WL 12834389 (E.D. Pa. Nov. 20, 2015) .................................10

*In re Rule 45 Subpoena*,
  2010 WL 2219343 (E.D.N.Y. Feb. 5, 2010), *report and recommendation
  adopted in part*, 2010 WL 1686811 (E.D.N.Y. Apr. 26, 2010) .......................................5

*Sarnowski v. United States*,
  No. 05-242, 2006 WL 2172615 (W.D. Pa. July 31, 2006) ...............................................5

*In re Search Warrant (Sealed)*,
  810 F.2d 67 (3d Cir. 1987) ..........................................................................................2, 10

*Sec. & Exch. Comm'n v. Wheeling-Pittsburgh Steel Corp.*,
  648 F.2d 118 (3d Cir. 1981) .............................................................................................6

*Swann v. Secretary, HUD*,
  No. 05-492, 2006 WL 148738 (D.D.C. Jan. 19, 2006) ....................................................5

*Tenaska Washington Partners II, L.P. v. U.S.*,
  34 Fed. Cl. 434 (1995) ......................................................................................................7

*Treasurer of N.J. v. U.S. Dep't of Treasury*,
  684 F.3d 382 (3d Cir. 2012) .............................................................................................4

*Turner v. United States*,
  881 F. Supp. 449 (D. Haw. 1995) .....................................................................................5

*United States v. Lazar*,
 No. 04-20017-DV, 2006 WL 3761803 (W.D. Tenn. Dec. 20, 2006) ........................................1

*United States v. Mitchell*,
 445 U.S. 535 (1980) ...............................................................................................................5

*United States v. Powell*,
 379 U.S. 48 (1964) .................................................................................................................6

*United States v. Westinghouse Elec. Corp.*,
 638 F.2d 570 (3d Cir. 1980) ..........................................................................................2, 9, 10

*Washington Legal Found. v. Henney*,
 202 F.3d 331 (D.C. Cir. 2000) ............................................................................................7, 8

*Webster v. Doe*,
 486 U.S. 592 (1988) ...............................................................................................................2

*Williams v. Moody*,
 No. CIV.A.98-1211, 1999 WL 320914 (E.D. Pa. May 18, 1999) .......................................10

**Statutes**

18 U.S.C. § 1035 ............................................................................................................................8, 9

18 U.S.C. § 1347 ............................................................................................................................8, 9

18 U.S.C. § 3486 ....................................................................................................................1, 2, 3, 5

21 U.S.C. § 301 *et seq.*..........................................................................................................6, 7, 8, 9

28 U.S.C. § 1331 ................................................................................................................................1

Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-
 191, § 248, 110 Stat. 1936 (1996) .....................................................................................2, 3

Presidential Threat Protection Act of 2000, Pub. L. No. 106-544, § 5(a), 114 Stat.
 2715 (2000) ............................................................................................................................3

**Other Authorities**

146 Cong. Rec. S10546-01 (daily ed. Oct. 13, 2000) .......................................................................3

76 Fed. Reg. 82303 (Dec. 30, 2011) ..................................................................................................7

Fed. R. Civ. P. 45(3) ..........................................................................................................................1

Fed. R. Civ. P. 81 ...............................................................................................................................1

Food & Drug Admin, Draft Guidance for Industry on Responding to
    Unsolicited Requests for Off-Label Information About Prescription
    Drugs and Medical Devices 2 (Dec. 2011),
    https://www.fda.gov/media/82660/download ................................................................. 6, 7

H.R. Rep. No. 106-669 (2000) ................................................................................................. 3

*President Trump Promised to End Child Sexual Mutilation-and He Delivered*,
    The White House (July 25, 2025),
    https://www.whitehouse.gov/articles/2025/07/president-trump-promised-to-
    end-child-sexual-mutilation-and-he-delivered/ ............................................................. 9

Steven A. Engel, *Whether the Food and Drug Administration Has Jurisdiction
    over Articles Intended for Use in Lawful Executions,* 43 Op. O.L.C. 81 (2019) ....... 7

U.S. Const. art. III ................................................................................................................ 1, 4

U.S. Off. Of The Att'y Gen., Memorandum for Select Component Heads:
    Preventing the Mutilation of American Children 6 (Apr. 22, 2025),
    https://www.justice.gov/ag/media/1402396/dl ............................................................. 9

*Understanding Unapproved Use of Approved Drugs "Off Label,"* Food and
    Drug Admin. (Feb. 5, 2018), https://www.fda.gov/patients/learn-about-
    expanded-access-and-other-treatment-options/understanding-unapproved-use-
    approved-drugs-label ................................................................................................. 6, 8

The Subpoena served on UPMC is what it appears to be—an unapologetic effort by the Administration to end gender-affirming care by threatening medical institutions and doctors with prosecution and invading the privacy of children. It should be quashed.

## ARGUMENT

**I.     Movants Have Standing to Move to Quash the Subpoena**

"[T]o have Article III standing, a litigant invoking the power of a federal court must plausibly allege (i) an injury-in-fact (ii) that is fairly traceable to the conduct of the party sued, and (iii) that is judicially redressable." *Lutter v. JNESO*, 86 F.4th 111, 124 (3d Cir. 2023).[1] For that reason, courts routinely find that a third party seeking to quash a subpoena has standing to do so when they have a "sufficiently important, legally-cognizable interest[ ] in the materials or testimony sought." *In re Grand Jury*, 111 F.3d 1066, 1073 (3d Cir. 1997) (collecting cases); *In re Grand Jury Matter*, 802 F.2d 96, 98 (3d Cir. 1986); *United States v. Lazar*, No. 04-20017-DV, 2006 WL 3761803, at *6 (W.D. Tenn. Dec. 20, 2006) ("Defendant has standing to challenge whether the government exceeded the scope of § 3486 in issuing subpoenas post-indictment to hospitals in order to obtain records of hospital peer-review committees.").

Movants, whose constitutional privacy interests the government seeks to invade and whose medical care the government seeks to eliminate, easily meet this test: They "would be injured in

---

[1] This Court, with jurisdiction under 28 U.S.C. § 1331, has various bases on which to entertain this motion. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010) ("equitable relief has long been recognized as the proper means for preventing entities from acting unconstitutionally") (citation modified); Fed. R. Civ. P. 81 ("These rules apply to proceedings to compel . . . the production of documents through a subpoena issued by a United States officer or agency"); Fed. R. Civ. P. 45(3) (proceedings to quash subpoena).

fact by further invasion of their privacy from disclosure . . . [, t]he cause[ ] of this injury [is] the subpoena . . . , and the injury is redressable by quashing the subpoena." *In re Grand Jury*, 111 F.3d at 1071. Practical realities may *also* allow the party served with a subpoena to assert underlying interests of a third party in the material summoned. *See United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 574 (3d Cir. 1980) (employer can raise claim for employees); *see also In re Search Warrant (Sealed)*, 810 F.2d 67, 71 (3d Cir. 1987) (allowing physician to raise claim for privacy rights of patients.). But that standing is additive, not a replacement for the ability of citizens to vindicate their own rights. *See Westinghouse*, 638 F.2d at 581 (providing employees an opportunity to object even after employer raised objections to the subpoena served upon it).

DOJ now posits that HIPAA subpoenas are different; that by providing that "the person or entity summoned may . . . petition for an order modifying or setting aside the summons," 18 U.S.C. § 3486(a)(5), Congress evinced an intent to deprive citizens of the right to protect their own privacy, no matter the scale of intrusion. DOJ Br. 4-8, Dkt. No. 27. In other words, it "argues that the provision of one mechanism for judicial review, at the behest of parties other than those whose privacy may be compromised by the seizure, impliedly precludes review" by those with privacy interests at stake. *Am. C.L. Union v. Clapper*, 785 F.3d 787, 804 (2d Cir. 2015).

"[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Webster v. Doe*, 486 U.S. 592, 603 (1988). Yet the United States has the history of the statute wrong and Congress' intent backward: Congress intended to protect citizens from subpoena abuses—regarding healthcare or the other regimes that use section 3486—not make citizens dependent on the benevolence of a third party to assert their rights.

When HIPAA was enacted, it remained silent on the contours of a statutory right to quash a subpoena. *See* Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-

191, § 248, 110 Stat. 1936, 2018-19 (1996). Then in 2000, Congress consolidated multiple administrative subpoena provisions from differing statutes into section 3486 and added in additional protections. *See* Presidential Threat Protection Act of 2000, Pub. L. No. 106-544, § 5(a), 114 Stat. 2715, 2716-18 (2000). First, through section 3486(a)(5), it conferred the same practical standing to subjects of the subpoenas that the Third Circuit already bestowed in other circumstances. *See id.* And second, in section 3486(a)(7), it expressly adopted general norms and standards for existing subpoena enforcement, prohibiting "the production of anything that would be protected from production under the standards applicable to a subpoena duces tecum issued by a court of the United States." Pub. L. No. 106-544, § 5(a). In other words, the amendment ensured that the law's administrative subpoenas accorded with general principles of oversight and discovery in federal courts, while also recognizing that institutions might be in the best position to make challenges to them.

Congress repeatedly made plain that the purpose of these amendments was: to "give citizens *added protections* against misuse of these subpoenas." H.R. REP. No. 106-669, at 6-7 (2000) (emphasis added).[2] Congress was "mak[ing] explicit that any summons issued under the section is not to be construed to require the production of anything that would be protected from production under the standards applicable to a subpoena duces tecum issued by a United States court. Simply stated, the committee intends that administrative subpoenas do not have any greater scope than would a subpoena issued by a United States court." *Id.* at 12-13. The goal was clear: "to protect the rights of citizens." *Id.* at 12; *see also* 146 CONG. REC. S10546-01, at S10547 (daily ed. Oct. 13, 2000) (speech of Sen. Patrick Leahy prior to passage describing same). Contrary to

---

[2] "Legislative history can play a confirmatory role in resolving ambiguity when statutory language and structure support a given interpretation." *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 621-22 (3d Cir. 2015).

3

DOJ's characterization, legislation designed to protect the rights of citizens does not evince a clear intent to reduce their rights instead.

Finally, standing is also conferred upon third parties to challenge subpoenas that injure them and which were, like this one, allegedly issued in bad faith. *In re Grand Jury*, 619 F.2d 1022, 1025-27 (3d Cir. 1980). It's no secret, nor is it "political rhetoric," DOJ Br. 22, that DOJ is using these subpoenas to end gender-affirming care in states like Pennsylvania where it remains legal. They admit that purpose while they celebrate that it is working. *See* § IV, *infra*. Movants, patients who were receiving this recognized, legal care, are injured by DOJ's issuance of this subpoena. Under Article III they have standing to redress that injury in this proceeding.

## II. Sovereign Immunity Provides No Shield to the Government's Incursion

DOJ's argument that "sovereign immunity principles" foreclose the Motion is baseless. The Third Circuit has recognized for more than forty years that, where a party seeks non-monetary relief, the Administrative Procedures Act ("APA") waives sovereign immunity. *Jaffee v. United States*, 592 F.2d 712, 719 (3d Cir. 1979) (although plaintiff's "claim for medical care is an action for money damages," his "claim for warning . . . is equitable," and therefore falls within the non-monetary relief exception of Section 702 of the APA); *see also Johnson v. Folio*, 528 F. Supp. 2d 548, 550 (E.D. Pa. 2007) ("[C]ourts have concluded that the APA waives sovereign immunity when the relief sought from the federal government is other than monetary relief[.]" (citations omitted)). This waiver is not limited to claims under the APA itself. *See Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 399 (3d Cir. 2012) ("the waiver of sovereign immunity contained in § 702 is not limited to suits brought under the APA" (citation omitted)); *accord Gillette v. Warden Golden Grove Adult Corr. Facility*, 109 F.4th 145, 154 (3d Cir. 2024) ("[T]he United States waives its sovereign immunity in non-monetary actions in federal court." (citation omitted)).

DOJ does not cite any law to the contrary. In fact, in four out of the five cases the DOJ cites, the party opposing the government sought monetary damages. *See Bah v. United States*, 91 F.4th 116, 122 (3d Cir. 2024); *Lane v. Pena*, 518 U.S. 187, 189 (1996); *F.D.I.C. v. Meyer*, 510 U.S. 471, 474, 486 (1994); *United States v. Mitchell*, 445 U.S. 535, 536 (1980). And in the fifth case, *Ponsford v. United States*, the Ninth Circuit merely affirmed a district court's refusal to quash five Internal Revenue Service summonses where a taxpayer was provided notice of a subpoena and a statutory process for quashing it, but failed to do so within the time frames the statute required. 771 F.2d 1305, 1309 (9th Cir. 1985). Sovereign immunity does not bar the Motion.

### III. Movants Are Not Time-Barred from Challenging a Subpoena They Have Never Seen

DOJ argues that Movants are out of time to quash a subpoena that they were never served and have never seen, with a response date which DOJ disclosed five days ago. They are wrong. To start, DOJ erroneously presumes Movants' rights are proscribed by section 3486. *See* § I, *supra*. Even were that true, the cases DOJ cites each have something that is missing from this matter: notice. *See Ponsford*, 771 F.2d at 1309 (notice presumed); *Sarnowski v. United States*, No. 05-242, 2006 WL 2172615, at *2 (W.D. Pa. July 31, 2006) (notice provided); *Turner v. United States*, 881 F. Supp. 449, 451 (D. Haw. 1995) (same); *Swann v. Secretary, HUD*, No. 05-492, 2006 WL 148738, at *1 (D.D.C. Jan. 19, 2006) (same). Here, with no notice nor service, Movants are not time-barred. *See, e.g.*, *In re Rule 45 Subpoena*, 2010 WL 2219343 at *6 (E.D.N.Y. Feb. 5, 2010), *report and recommendation adopted in part*, 2010 WL 1686811 (E.D.N.Y. Apr. 26, 2010) (good cause existed where third-party challenger was not made aware of return date until after it had passed).[3]

---

[3] Courts also will consider quashal after information is turned over. *See In re Grand Jury Investigation,* 445 F.3d 266, 270 (3d Cir. 2006) (court can fashion relief through return of subpoenaed information).

## IV. DOJ's Declaration Provides No Cover for its Bad Faith

Subpoenas are issued in bad faith when they are used "to put pressure on [a recipient] to settle a collateral dispute," *United States v. Powell*, 379 U.S. 48, 58 (1964), when an agency "is knowingly pursuing frivolous allegations in bad faith" or when an agency is "motivated by . . . animus." *Sec. & Exch. Comm'n v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 129 (3d Cir. 1981). DOJ's arguments here, which involve tortured justifications to support a supposed FDCA investigation centered around off-label prescriptions, *see, e.g.*, DOJ Br. 2-3, defies positions previously taken by DOJ, including its Office of Legal Counsel ("OLC"), and well-established precedent.

DOJ goes to great lengths to cast this Subpoena and the underlying investigation as routine and typical, DOJ Br. 17-20; Hsiao Decl. ¶ 10, Dkt. No. 27-1, when it's in fact an extraordinary attempt to use the FDCA to regulate, and indeed criminalize, the practice of medicine. Gender-affirming care is legal in Pennsylvania. So are the doctors' off-label prescription, administration, and use of puberty blockers and cross-sex hormones for this care: "[O]nce the FDA approves a drug, healthcare providers generally may prescribe the drug for an unapproved use when they judge that it is medically appropriate for their patient." *Understanding Unapproved Use of Approved Drugs "Off Label,"* FOOD AND DRUG ADMIN. (Feb. 5, 2018), https://www.fda.gov/patients/learn-about-expanded-access-and-other-treatment-options/understanding-unapproved-use-approved-drugs-label.[4] The off-label use of medical

---

[4] 2011 FDA guidance regarding unsolicited requests for off-label information notes: "[O]nce a drug or medical device has been approved or cleared by FDA, generally, health care professionals can lawfully use or prescribe that product for uses or treatment indications that are not included in the product's approved labeling . . . the FDA recognizes that these off-label uses . . . may even constitute a medically recognized standard of care." FOOD & DRUG ADMIN, DRAFT GUIDANCE FOR INDUSTRY ON RESPONDING TO UNSOLICITED REQUESTS FOR OFF-LABEL INFORMATION ABOUT PRESCRIPTION DRUGS AND MEDICAL DEVICES, 2 (Dec. 2011),

devices "is an accepted and necessary corollary of the FDA's mission to regulate in this area without directly interfering with the practice of medicine." *Buckman v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001). The FDCA expressly states that it does not interfere with the authority of a medical provider to "prescribe or administer any legally marketed device to any patient for any condition or disease within a legitimate health care practitioner-patient relationship." *Id.*; 21 U.S.C. § 396.

OLC is fully aligned, stating that the "FDA does not regulate the practice of medicine, which includes 'off-label' prescribing." Steven A. Engel, *Whether the Food and Drug Administration Has Jurisdiction over Articles Intended for Use in Lawful Executions,* 43 OP. O.L.C. 81, 85 (2019).[5] "[W]hile the FDCA bars a *manufacturer or distributor* from selling any drug or device for an unapproved use, physicians may, with limited exceptions, prescribe and administer FDA-approved drugs and devices for unapproved uses." *Id.* (emphasis added).[6] DOJ made this same representation to the Third Circuit just six weeks ago. *Penelow v. Janssen Prods. LP*, No. 25-1818, at 8 (3d Cir. Aug. 27, 2025), Dkt. No. 56 (stating that the FDA does not regulate the practice of medicine and that once a drug "is approved for one use at one dosage, doctors are

---

https://www.fda.gov/media/82660/download (announced at 76 Fed. Reg. 82303, 82303-04 (Dec. 30, 2011)).

[5] "Memoranda issued by the OLC, including this one, are binding on the Department of Justice and other Executive Branch agencies and represent the official position of those arms of government." *Tenaska Washington Partners II, L.P. v. U.S.,* 34 Fed. Cl. 434, 439 (1995).

[6] DOJ tacitly concedes the entire enterprise, noting that a physician may "prescribe an approved drug for an unapproved use without violating the FDCA." *See* Hsiao Decl. ¶. 12, n.1. But it never reconciles the contradictions between the Hsiao Declaration and OLC's opinion. For example, OLC's opinion states that the practice of medicine, which the FDA does not regulate, includes both prescribing and administering medicine. 43 OP. O.L.C. at 85. The Hsiao Declaration, meanwhile, suggests "administering" medicine is "distribution," and thus is now under DOJ's purview. Hsiao Decl. ¶ 23. The Declaration also suggests that doctors prescribing off-label is "possible," and a narrow exception, whereas OLC emphasizes that the general rule is noninterference with the practice of medicine. Hsiao Decl. ¶ 12, n.1; 43 Op. O.L.C at 85.

7

free to prescribe it for unapproved uses or at other dosages—a practice sometimes called 'off-label' prescribing." (citing *Washington Legal Found. v. Henney*, 202 F.3d 331, 332-33 (D.C. Cir. 2000)). DOJ explained, "[o]ff-label prescription of a drug can sometimes be both medically accepted and reasonable and necessary for a given patient." *Id.* at 9 (citing Fed. Reg. 4,194, 4,261 (Jan. 28, 2005)). And the FDA's "misbranding provisions govern how drugs may be marketed; they do not govern whether federal healthcare programs will reimburse for the drugs, as prescribed for particular patients." *Id.* at 36.

Within that framework, DOJ purportedly seeks records to investigate possible violations of the FDCA, specifically, the "distribution, promotion, and use of puberty blockers and cross-sex hormones in minors…." DOJ Br. 22. But because the FDCA did not (and does not) prohibit the conduct DOJ now seeks to criminalize, DOJ attempts to justify the Subpoena by offering tortured and novel arguments that the FDCA somehow prohibits this disfavored medical care. Among other things, DOJ repeatedly obscures and confuses the differences between the legal obligations of *manufacturers* related to the approval, labeling, branding, and distribution of drugs with the *doctors* who prescribe approved drugs for off-label purposes, who the DOJ targets through the Subpoena. *Compare Understanding Unapproved Use of Approved Drugs "Off Label,"* U.S. FOOD & DRUG ADMIN. (Feb. 5, 2018), https://www.fda.gov/patients/learn-about-expanded-access-and-other-treatment-options/understanding-unapproved-use-approved-drugs-label, 21 U.S. Code §§ 331, 352.

Moreover, the lack of alignment between the requested documents, the justifications, and the alleged violations DOJ is investigating speaks volumes. For example, DOJ seeks all patient records, including those to evaluate "billing and insurance claims," Hsiao Decl. ¶ 38, while not purporting to investigate violations of healthcare fraud statutes, including Sections 1035 and 1347

of Title 18. And the fact that DOJ issued identical subpoenas at virtually the same time to at least nineteen other medical institutions with slim to no evidence of any coherent violations of the FDCA – including zero substantive allegations of even faint wrongdoing at UPMC – is further indication that this Subpoena and the others lack substance and a proper purpose.

These sorts of leaps cannot obscure reality: The Attorney General issued a memorandum beginning these investigations with a specific purpose: "bring[ing] [gender-affirming care] to an end."[7] There is a straight line from that directive to these subpoenas. As its counsel stated in related litigation, DOJ believes "it is a rational governmental objective or purpose to eliminate the medicalized gender-affirming care of minors and that's exactly what this investigation is about." Tr. of Mot. Hr'g 25:14-17, *In Re: Administrative Subpoena No. 25-1431-019*, 1:25-mc-91324 (D. Mass. Sep. 1, 2025), Dkt. No. 30.[8] The Trump Administration celebrates that these efforts have worked at this very hospital.[9]

The Subpoena is precisely what it seems: the raw use of government power to advance that policy agenda. It should be quashed.

V.   *Westinghouse* Applies and Counsels Quashing the Subpoena

The substance of DOJ's argument regarding *Westinghouse*—the DOJ's need for these documents and the broader public interest together trump the serious privacy interests at stake in this matter—runs aground on the same rocks as their bad faith argument, *see* § IV, *supra*, with an

---

[7] U.S. OFF. OF THE ATT'Y GEN., MEMORANDUM FOR SELECT COMPONENT HEADS: PREVENTING THE MUTILATION OF AMERICAN CHILDREN, 6 (Apr. 22, 2025), https://www.justice.gov/ag/media/1402396/dl.
[8] *See also* Movants' Br. 4-6, Dkt. No 2.
[9] *President Trump Promised to End Child Sexual Mutilation—and He Delivered*, THE WHITE HOUSE (July 25, 2025), https://www.whitehouse.gov/articles/2025/07/president-trump-promised-to-end-child-sexual-mutilation-and-he-delivered/ (touting UPMC's suspension of gender-affirming care to minors)

attempted invasion of privacy intended to accomplish a political agenda through dubious means. *Westinghouse* requires more, which is why DOJ argues that *Westinghouse* does not apply, but DOJ is wrong: *Westinghouse*, a case regarding an administrative subpoena, makes clear that where an individual's informational privacy interest is at stake, "a judicial 'balancing test'" must take place "in which the societal interest in disclosure is weighed against the privacy interests of the individuals." *C.N. ex rel. J.N. v. Ridgewood Bd. of Educ.*, 319 F. Supp. 2d 483, 495 (D.N.J. 2004). These factors, therefore, are to be considered any time a court analyzes whether a litigant's right to privacy will be violated by a disclosure of their personal information. *See F.D.I.C. v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995) (administrative subpoena); *In re Search Warrant* 810 F.2d 67, (3d Cir. 1987); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, (3d Cir. 2005) (questionnaire).[10]

## VI.   The Court has the Inherent Power to Quash a Subpoena and to Protect the Rights of Third Parties

Courts have long had the inherent power to quash a subpoena *sua sponte* and to exercise that power to protect the rights of third parties. *See Rivera v. Lehigh Cnty.*, No. 13-CV-04748, 2015 WL 12834389, at *1 n.1 (E.D. Pa. Nov. 20, 2015) ("Defendants have not asserted any privilege with respect to the documents requested in plaintiff's subpoenas. The court may, however, issue a *sua sponte* order quashing subpoenas."); *see also Williams v. Moody*, No. CIV.A.98-1211, 1999 WL 320914, at *1 n.1 (E.D. Pa. May 18, 1999) ("this court could quash the subpoenas *sua sponte*"). This Court should do the same.

## CONCLUSION

Movants respectfully request that this Court quash those parts of the Subpoena that seek production of the identities or health information of patients and their parents.

---

[10] The United States' argument that other circuit courts have not cited *Westinghouse*, DOJ Br. 12-13—a Third Circuit precedent—is hardly surprising.

Dated: October 7, 2025

By: /s/ *Jill Steinberg*
Jill Steinberg* (PA 82127)
J. Chesley Burruss* (PA 331521)
Kevin M. Hayne* (NY 5967526)
Elizabeth A. Lilly* (PA 336185)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
215-665-8500
steinbergj@ballardspahr.com
burrussc@ballardspahr.com
haynek@ballardspahr.com
lillye@ballarspahr.com

By: /s/ *Colin J. Callahan*
Colin J. Callahan (PA 328033)
FLANNERY GEORGALIS
436 Seventh Avenue
Koppers Building, Ste. 2100
Pittsburgh, PA 15219
412-213-4246
ccallahan@flannerygeorgalis.com

Respectfully submitted,

By: /s/ *Mary M. McKenzie*
Mary M. McKenzie* (PA 47434)
Daniel Urevick-Ackelsberg* (PA 307758)
Meghan Binford* (PA 321212)
Olivia Mania* (PA 336161)
PUBLIC INTEREST LAW CENTER
2 Penn Center
1500 JFK Blvd., Suite 802
Philadelphia, PA 19102
267-546-1316
mmckenzie@pubintlaw.org
dackelsberg@pubintlaw.org
mbinford@pubintlaw.org
omania@pubintlaw.org

*Counsel for Movants*
**Pro hac vice*

## CERTIFICATE OF SERVICE

I, Daniel Urevick-Ackelsberg, hereby certify that on the 7th of October, 2025, I caused the foregoing document to be filed electronically with this Court, where it is available for viewing and downloading from the Court's ECF system by the Court and all parties.

*/s/ Daniel Urevick-Ackelsberg*
Daniel Urevick-Ackelsberg
