**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: 2025 UPMC Subpoena | No. 2:25 Misc. 1069 (CB) <br><br> Chief Judge Cathy Bissoon |

**BRIEF OF *AMICUS CURIAE* UPMC CHILDREN'S HOSPITAL OF PITTSBURGH**
**IN RESPONSE TO DECEMBER 24, 2025 ORDER (DKT. NO. 52)**

**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**

Robert A. Zink (admitted *pro hac vice*)
Bar No. 502694 (District of Columbia)
555 13th Street NW, Suite 600
Washington, DC 20004
(202) 538-8000
robertzink@quinnemanuel.com

Daniel R. Koffmann (admitted *pro hac vice*)
Bar No. 5188487 (New York)
295 Fifth Avenue
New York, NY 10016
(212) 849-7000
danielkoffmann@quinnemanuel.com

*Counsel for* Amicus Curiae *UPMC*
*Children's Hospital of Pittsburgh*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................ 1

II.   RELEVANT FACTS ........................................................................................... 1

    A.  The Executive Order and Related Federal Action Regarding Gender-
        Affirming Care................................................................................................ 1

    B.  The Government's Issuance of a Subpoena to UPMC Children's ............................. 4

III.  RELEVANT PROCEDURAL HISTORY .............................................................. 6

    A.  Movants' Motion to Quash ........................................................................... 6

    B.  Government's Response and Motion for Supplemental Briefing........................ 6

    C.  UPMC Children's *Amicus* Brief ..................................................................... 7

    D.  This Court's December 24, 2025 Order........................................................ 7

IV.   POSITIONS OF THE PARTIES ........................................................................ 8

    A.  Government's Position................................................................................... 8

    B.  Movants' Position ........................................................................................ 9

V.    UPMC CHILDREN'S POSITION ..................................................................... 9

VI.   CONCLUSION.................................................................................................. 11

## I.      INTRODUCTION

UPMC Children's Hospital of Pittsburgh ("UPMC Children's")[1] respectfully submits this brief in response to the Court's December 24, 2025 Order inviting cross-briefing on the matter of potential anonymized productions.  *See* Order at 6 (Dkt. No. 52).  UPMC Children's respectfully submits that any order the Court enters should (1) require redaction of patient health information ("PHI") and personally identifiable information ("PII") in a manner consistent with the Health Insurance Portability and Accountability Act ("HIPAA"), 45 C.F.R. § 164.514(b)(2), from any materials responsive to the subpoena and (2) grant leave to UPMC Children's to seek appropriate Court relief if such redactions (or any other aspect of responding to the subpoena) would render UPMC Children's compliance with the subpoena unduly burdensome or otherwise contrary to law. Such an order would be consistent with the efforts UPMC Children's has undertaken since the day it received the subpoena to safeguard patient privacy while complying with its legal obligations to respond to the subpoena.

## II.     RELEVANT FACTS

### A.      The Executive Order and Related Federal Action Regarding Gender-Affirming Care

Until January 28, 2025, no Pennsylvania or federal law prohibited the gender-affirming care that UPMC Children's allowed providers with staff privileges to provide to minor patients, including pharmacological care.  On January 28, however, the President issued an Executive Order stating that "it is the policy of the United States that it will not fund, sponsor, promote, assist, or support the so-called 'transition' of a child from one sex to another, and it will rigorously enforce all laws that prohibit or limit these destructive and life-altering procedures."   Exec. Order

---

[1]    The caption incorrectly identifies UPMC, as distinct from UPMC Children's, as the recipient of the subpoena at issue.

No. 14187, 90 Fed. Reg. 8771 (Jan. 28, 2025).  The Executive Order further stated that gender-affirming care—including "the use of puberty blockers ... to delay the onset or progression of normally timed puberty in an individual who does not identify as his or her sex; the use of sex hormones ... to align an individual's physical appearance with an identity that differs from his or her sex; and surgical procedures that attempt to transform an individual's physical appearance to align with an identity that differs from his or her sex or that attempt to alter or remove an individual's sexual organs to minimize or destroy their natural biological functions"—"must end." *Id.* §§ 1–2.

The Executive Order directed federal agencies that fund research or education at medical institutions to "immediately take appropriate steps to ensure that institutions receiving Federal research or education grants end the chemical and surgical mutilation of children." *Id.* § 4.  The Executive Order further directed the Secretary of Health and Human Services ("HHS") to change Medicare and Medicaid coverage and participation conditions, as well as clinical-abuse and inappropriate-use assessments, relevant to state Medicaid programs.  *Id.* § 5(a)(i)–(ii).  The Executive Order also directed the Justice Department to "prioritize investigations and take appropriate action to end deception of consumers, fraud, and violations of the Food, Drug, and Cosmetic Act by any entity that may be misleading the public about long-term side effects of" gender-affirming care.  *Id.* § 8(c).

In response to the Executive Order, the Attorney General issued a memorandum on April 22, 2025 stating that the Department of Justice would "act decisively to … hold accountable those who" provide gender-affirming care to minors.  *See* Mem. from Off. of Att'y Gen. to Select Component Heads at 3 (Apr. 22, 2025), https://www.justice.gov/ag/media/1402396/dl.  In the memorandum, the Attorney General directed (1) U.S. Attorneys to investigate suspected cases of

female genital mutilation ("FGM") in violation 18 U.S.C. § 116(a)(1) that occurred "under the banner of so-called 'gender affirming care' or otherwise" and "to prosecute all FGM offenses to the fullest extent possible"; (2) the Consumer Protection Branch to investigate violations of the Food, Drug, and Cosmetic Act "by manufacturers and distributers engaged in misbranding by making false claims about the on- or off-label use of puberty blockers, sex hormones, or any other drug used to facilitate a child's so-called 'gender transition'"; and (3) the Civil Fraud Section to investigate violations of the False Claims Act based on "false claims submitted to federal health care programs for any non-covered services related to radical gender experimentation." *Id.* at 3–4. On June 11, 2025, the Acting Assistant Attorney General for the Civil Division issued a memorandum stating that "[t]he Civil Division will use all available resources to prioritize investigations of doctors, hospitals, pharmaceutical companies, and other appropriate entities consistent with [the Attorney General's] directives." Mem. from Brett A. Shumate, Assistant Att'y Gen., to All Civ. Div. Emps. at 2 (June 1, 2025), https://www.justice.gov/civil/media/1404046/dl?inline.

On December 18, 2025, the HHS Secretary also responded to the Executive Order, declaring that gender-affirming care (which the Secretary referred to as "sex-rejecting procedures") "for children and adolescents [is] neither safe nor effective as a treatment modality for gender dysphoria, gender incongruence, or other related disorders in minors, and therefore, fail[s] to meet professional recognized standards of care." Government's Notice of Supplemental Authority, Attachment 1 at 9 (Dkt. No. 49-1); *see also* Attachment 2 (Dkt. No. 49-2) (memorandum issued by Assistant HHS Secretary on December 18, 2025). HHS has also issued proposed rules that, if adopted, would revise the requirements that hospitals must meet for participation in Medicare and Medicaid, including to prohibit hospitals from performing "sex-

rejecting procedures" on minors and to prohibit many state and federally funded payments for such procedures on minors. *See* Medicare and Medicaid Programs; Hospital Condition of Participation: Prohibiting Sex-Rejecting Procedures for Children, F.R. Doc. 2025-23465 (proposed Dec. 19, 2025) (to be codified at 42 C.F.R. pt. 482); Medicaid Program; Prohibition on Federal Medicaid and Children's Health Insurance Program Funding for Sex-Rejecting Procedures Furnished to Children, F.R. Doc. 2025-23464 (proposed Dec. 19, 2025) (to be codified at 42 C.F.R. pts. 441, 457).

This case does not turn on the legal impact of those federal actions. But it is noteworthy that legal precedent addressing responses to the COVID-19 pandemic indicated that those federal mandates preempted any conflicting state law. In *Qlarant Integrity Solutions, LLC v. Guthneck*, 565 P.3d 1209 (Mont. 2025), for example, the Montana Supreme Court addressed whether an Executive Order and corresponding executive action requiring federal contractors to comply with vaccination and workplace safety guidance preempted a Montana statute prohibiting employment discrimination based on vaccination status. *Id.* at 1212–13, 1215. *Qlarant* held that the executive action expressly preempted contrary state law. *Id.* at 1216–17. The executive actions here go further, creating risks of revoking critical federal funding and potential civil or criminal liability for medical providers. Faced with these federal actions and the expressly stated risks, UPMC Children's has aligned its gender-affirming care practices accordingly.

### B.     The Government's Issuance of a Subpoena to UPMC Children's

On July 11, 2025, prosecutors from the Department of Justice served UPMC Children's with a subpoena duces tecum pursuant to 18 U.S.C. § 3486, seeking 15 categories of documents. *See* Opposition to Motion to Quash at 4 and Exhibit A at 12–14 (Dkt. Nos. 27, 27-1). The government has indicated that it issued subpoenas to more than 20 other hospitals with requests identical to those it made to UPMC Children's. *See* Press Release, Off. of Pub. Affs., U.S. Dep't

of Just., Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children (July 9, 2025), https://www.justice.gov/opa/pr/ department-justice-subpoenas-doctors-and-clinics-involved-performing-transgender-medical.

After receiving the subpoena, UPMC Children's immediately engaged with the government to discuss ways to mitigate the impact that the subpoena could have on patient privacy. UPMC Children's and the government worked constructively and agreed in early August 2025 to the following plan for UPMC Children's response to the subpoena:

- <u>No Patient Records Initially</u>: UPMC Children's would focus its initial responses, including any document production, on materials relevant to the government's investigation of misbranding, off-label marketing, and other requests *aside* from requests 11, 12, and 13.

- <u>Deidentified Records (if pursued)</u>: When UPMC Children's completed those productions and if the government chose to pursue materials responsive to requests 11, 12, and 13, UPMC Children's would redact any PHI or PII and otherwise anonymize those records consistent with the HIPAA regulation contained in 45 C.F.R. § 164.514(b)(2).

- <u>Reserving Positions on Identified Records (if pursued)</u>: UPMC Children's production of such materials would be without prejudice to either the government's right to move to compel production of PHI or PII or UPMC Children's right to seek a protective order against production of such information.

*See* Motion for Supplemental Briefing at 1–2 (Dkt. No. 47); Opposition to Motion to Quash at 2 (Dkt. No. 27). To protect the integrity of its investigation, the government asked UPMC Children's not to disclose these agreements and plans at that time. In the interest of safeguarding the protections it had secured for the confidentiality of its patients' PHI and PII, UPMC Children's abided by the government's request.

As a result, UPMC Children's never agreed to produce PHI or PII in response to the subpoena, and it made clear to the government that UPMC Children's could seek a protective order if the government insisted on such information. Based on that understanding, UPMC Children's (1) has not produced any materials responsive to requests 11, 12, and 13; (2) has not otherwise

produced any PHI or PII in response to the subpoena; and (3) was planning to deidentify any PHI or PII in the event it was responsive to a different request.

## III.     RELEVANT PROCEDURAL HISTORY

### A.     Movants' Motion to Quash

On September 24, 2025, Movants—self-identifying and being identified by the Court as patients and parents of minor patients who received gender-affirming care at UPMC Children's[2]— filed a Motion to Quash portions of the subpoena issued to UPMC Children's.  Motion to Quash (Dkt. No. 1).  Movants sought to quash: (1) requests 11, 12, and 13 in their entirety; and (2) any other request to the extent it calls for the production of "the identities or health information of patients and their parents or guardians."  *Id.* at 2.

### B.     Government's Response and Motion for Supplemental Briefing

The government opposed the Motion to Quash on October 2, 2025.  Opposition to Motion to Quash (Dkt. No. 27).  On December 16, the government disclosed that it previously had not insisted, and would not in the future insist, on the production of the sensitive information at the heart of Movants' Motion to Quash.  *See* Motion for Supplemental Briefing (Dkt. No. 47). Specifically, the government disclosed that (1) shortly after it received the subpoena, UPMC Children's had requested, and the government provisionally had agreed, that UPMC Children's could redact PHI and PII from materials that UPMC Children's would produce in response to the Subpoena, and (2) the government subsequently had "narrowed the scope of the subpoena to accept only anonymized patient medical records in full satisfaction of the challenged requests in

---

[2]     UPMC Children's cannot comment further on these allegations because Movants' counsel has not disclosed their clients' identities to UPMC Children's and, to respect the spirit of the Motion to Proceed Under Pseudonym (Dkt. No. 3), UPMC Children's has not undertaken to identify Movants or confirm whether they, in fact, received care at UPMC Children's.

the subpoena." *Id.* at 1.  The government suggested that the Court consider supplemental briefing in light of its "narrowing of the subpoena." *Id.* at 2.

>     C.    **UPMC Children's *Amicus* Brief**

On November 25, 2025, the Court granted UPMC Children's request to appear as *amicus curiae* in order to provide information relevant to the Court's resolution of the Motion to Quash. *See* Order Granting Motion to File Amicus Brief (Dkt. No. 42).  As stated in UPMC Children's *amicus* brief, "[t]o date, UPMC Children's has not disclosed to the government any information or other materials that are the subject of Movants' Motion to Quash."  Amicus Brief ¶ 7 (Dkt. No. 40-1).  This representation remains true today.

>     D.    **This Court's December 24, 2025 Order**

This Court granted Movants' Motion to Quash as to requests 11, 12, and 13.  Order at 2, 6. The Court also declined to rule on Movants' catchall request to quash any other subpoena request to the extent it would call for production of "the identities or health information of patients and their parents or guardians."  Order at 2, 6.  In its Order, the Court "incorporated by reference" the analyses contained in *In re Subpoena No. 25-1431-014*, --- F. Supp. 3d ----, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025), which quashed a subpoena to Children's Hospital of Philadelphia ("CHOP") that contained requests identical to those made of UPMC Children's.  Order at 2–5.

As relevant here, the CHOP opinion had three core holdings:  (1) the government lacks statutory authority to compel CHOP to produce information responsive to requests 11, 12, and 13; (2) even if the government had such authority, the subpoena would be subject to review under *United States v. Westinghouse*, 638 F.2d 570 (3d Cir. 1980); and (3) application of *Westinghouse* to requests 11, 12, and 13 "overwhelmingly weigh[s] in favor of protecting the privacy interests of the Hospital's child patients."  2025 WL 3252684, at *8–9.  Underlying its holding that there is no statutory authority for requests 11–13 was the finding that the government had "not offered a

factual basis (rather than investigative speculation) to find the personally identifying and clinical child-patient records sought in Requests 11, 12, and 13 are relevant to an authorized investigation of a *federal health care offense* within the meaning of Section 3486," because "the connection between child-patient-identifying information and potential fraudulent billing codes or unlawful off-label promotion is tenuous at best and cannot shoulder the weight of compelled disclosure of a child's medical files." *Id.* at *14–15.  In its order, the CHOP court "STR[UCK] Requests, 11, 12, and 13 and grant[ed] leave to redact the same information sought in those Requests from documents produced in response to Requests 1–10, 14, or 15."  Order, *In re Subpoena No. 25-1431-014*, 25-mc-00039 (MAK) (E.D. Pa. Nov. 21, 2025) (Dkt. No. 44); *see also* 2025 WL 3252684, at *34 ("We grant the Hospital's motion in part striking the three challenged requests and all information contained in responses to other requests disclosing the same information.").

This Court's Order also invited additional briefing by the parties "on the matter of potential anonymized productions, as envisioned in" the government's Motion to Supplement and granted leave for UPMC Children's to file a brief.  Order at 6.

## IV.    POSITIONS OF THE PARTIES

### A.    <u>Government's Position</u>

Based on discussions with the government, UPMC Children's understands that the government interprets the Court's December 24 Order to have quashed only the original version of requests 11, 12, and 13 and that the Order left open the possibility that those requests may be viable as narrowed by the government's agreement to accept only anonymized patient medical records in satisfaction of the requests.  In its Motion for Supplemental Briefing, the government suggested that this narrowing of the subpoena eliminated concerns about patient privacy and rendered Movants' challenge "likely moot."  Motion for Supplemental Briefing at 2.

B.    **Movants' Position**

UPMC Children's understands that Movants, on the other hand, interpret the Court's Order to mean that requests 11, 12, and 13 are quashed in their entirety and that UPMC Children's must not to produce materials responsive to those requests, whether or not they are anonymized. Movants previously suggested that anonymization would not cure the subpoena's improper intrusion into their privacy because the nature of the information sought is "so deeply personal that no redaction can keep Movants anonymous and protect their privacy." Memorandum in Support of Motion to Quash at 9 (Dkt. No. 2); *see also* Movant Declarations at ¶¶ 11–12 (Dkt. Nos. 2-1, 2-2, 2-3, 2-4) (asserting that deidentified information would permit identification of the patient and the patient's guardian due to the detailed personal and mental health information). Thus, Movants argue "any anonymization of [information in the medical files of children that led to their diagnosis and course of treatment] would be insufficient and ineffective because the volume and detail in those records would inevitably point to a particular child and their family." Memorandum in Support of Motion to Quash at 13–14.

## V.    UPMC CHILDREN'S POSITION

UPMC Children's takes no position on the disagreement described in Section IV. UPMC Children's respectfully submits that its path forward should be the same either way. Specifically, it asks the Court to enter an order that:

- directs UPMC Children's to redact, in a manner consistent with 45 C.F.R. § 164.514(b)(2),[3] all PHI and PII from materials produced in response to requests 1–

---

[3]    Section 164.514(b)(2) requires redaction of the following information regarding patients, as well as relatives, employers, or household members: (A) names; (B) all geographic subdivisions smaller than a state or, in some circumstances, the initial three digits of a zip code; (C) all elements of dates (except year) for dates directly related to an individual, including birth date, admission date, discharge date, date of death; (D)  telephone numbers; (E) fax numbers; (F) email addresses; (G) Social Security Numbers; (H) medical record numbers; (I) health plan beneficiary numbers; (J) account numbers; (K) certificate/license numbers; (L) vehicle identifiers and serial numbers, (footnote continued)

10, 14, and 15, and, to the extent they are not quashed in their entirety, requests 11–13; and

- grants UPMC Children's leave to seek relief from the Court if applying such redactions—or if any other aspect of compliance with the subpoena—would be unduly burdensome or otherwise contrary to law, or if any other dispute arises regarding UPMC Children's compliance with the subpoena that cannot be resolved through good-faith negotiations among the parties.

Such an order would be consistent with the Court's conclusion that the government cannot compel production of PHI and PII in connection with this investigation, as well as the CHOP decision's granting leave to redact such information from materials responsive to other requests in the subpoena. *See* 2025 WL 3252648, at *34 ("We grant the Hospital's motion in part striking the three challenged requests and all information contained in responses to other requests disclosing the same information."); *see also* Order, *In re Subpoena No. 25-1431-014*, 25-mc-00039 (MAK) ("STRIK[ING] Requests 11, 12, and 13 and grant[ing] leave to redact the same information sought in those Requests from documents produced in response to Requests 1–10, 14, or 15").

At this stage of UPMC Children's response to the subpoena, it is not able to estimate the time and expense it would incur in deidentifying responsive patient records (if any). For example, UPMC Children's never began the process of collecting or reviewing materials responsive to requests 11, 12, and 13. *See supra* at Section II.B, at 4–6.

---

including license plate numbers; (M) device identifiers and serial numbers; (N) URLs; (O) IP addresses; (P) biometric identifiers, including finger and voice prints; (Q) full face photographic images and any comparable images; and (R) with certain exceptions, any other unique identifying number, characteristic, or code. Notwithstanding the redaction of any such information, Section 164.514(b)(2)(ii) still prohibits disclosure where UPMC Children's has "actual knowledge" that unredacted information "could be used alone or in combination with other information to identify" a patient.

## VI.    CONCLUSION

For the foregoing reasons, the Court should enter an order (1) requiring UPMC Children's to deidentify PHI and PII through redaction consistent with 45 C.F.R. § 164.514(b)(2) from materials responsive to the subpoena; and (2) permitting additional motion practice if such deidentification is unduly burdensome or otherwise contrary to law, or another disagreement arises that cannot be resolved through good-faith negotiations.

Dated:  January 16, 2026                 Respectfully submitted,

                                 **QUINN EMANUEL URQUHART**
                                 **& SULLIVAN, LLP**

By:  /s/ *Robert A. Zink*
             Robert A. Zink (admitted *pro hac vice*)
             Bar No. 502694 (District of Columbia)
             555 13th Street NW, Suite 600
             Washington, DC 20004
             (202) 538-8000
             robertzink@quinnemanuel.com

             Daniel R. Koffmann (admitted *pro hac vice*)
             Bar No. 5188487 (New York)
             295 Fifth Avenue
             New York, NY 10016
             (212) 849-7000
             danielkoffmann@quinnemanuel.com

             *Counsel for* Amicus Curiae *UPMC*
             *Children's Hospital of Pittsburgh*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 16, 2026, I caused the foregoing brief to be served on all

parties of record by ECF and by email to:


Patrick R. Runkle
Ross S. Goldstein
United States Department of Justice
Enforcement & Affirmative Litigation Branch
1100 L. Street NW
Washington, DC 20530
patrick.r.runkle@usdoj.gov
ross.goldstein@usdoj.gov

Mary M. McKenzie
Daniel Urevick-Ackelsberg
Meghan Binford
Olivia Mania
PUBLIC INTEREST LAW CENTER
2 Penn Center
1500 JFK Blvd., Suite 802
Philadelphia, PA 19102
mmckenzie@pubintlaw.org
dackelsberg@pubintlaw.org
mbinford@pubintlaw.org
omania@pubintlaw.org

J. Chesley Burruss
Kevin M. Hayne
Elizabeth A. Lilly
Michael P. Robotti
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
steinbergj@ballardspahr.com
burrussc@ballardspahr.com
haynek@ballardspahr.com
lillye@ballarspahr.com
robottim@ballardspahr.com

Colin J. Callahan
FLANNERY GEORGALIS
436 Seventh Avenue
Koppers Building, Ste. 2100
Pittsburgh, PA 15219
ccallahan@flannerygeorgalis.com


 /s/ *Robert A. Zink*
Robert A. Zink