UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: 2025 UPMC SUBPOENA | MISCELLANEOUS ACTION<br><br>Case No. 2:25-mc-1069-CB |

**GOVERNMENT'S SUPPLEMENTAL BRIEF**

The United States submits this supplemental brief pursuant to the Court's order of December 24, 2025.  ECF 52.  Respectfully, the plaintiffs now lack Article III standing, which means the Court now lacks jurisdiction.  Accordingly, the Court should dismiss this action, thereby allowing UPMC to produce to the Government de-identified information that does not impinge in any way on plaintiffs' privacy interests.  Even if the action is not fully moot, the application of the *Westinghouse* factors as to de-identified records now weighs strongly in favor of the Government.  Hence, the Court should make clear in its order dismissing this action that UPMC is permitted to comply with all specifications of the subpoena in full as long as all patient information provided is de-identified pursuant to HIPAA's de-identification procedures.

**BACKGROUND**

UPMC has not filed a motion to quash the instant subpoena, and the anonymous plaintiffs in this matter sought relief only as to patient identities, health information, and records.  Prior to plaintiffs filing suit, the Government conferred with UPMC counsel and agreed that the Government would accept de-identified patient records in a first wave of productions, with the parties delaying until after such data was produced the question of whether any unredacted data would be produced.  UPMC had not yet produced any identified or de-identified patient records

or information prior to plaintiffs filing suit and have not produced any such material since due to the pendency of this action. ECF 40-1.

On December 15, 2025, the Government revised its agreement with UPMC counsel so that the subpoena would be fully satisfied by production of only de-identified records, so that no individual patient could be identified to the Government. ECF 47. The Government made this concession in part to address the privacy concerns that animated plaintiffs' lawsuit. *Id*.; *see* ECF 2 at 8 (citing the government's "intrusion into [patients'] privacy"). The Government has also promised to inform the plaintiffs if the Government issues another HIPAA subpoena seeking patient records to UPMC, which the Government has no current plans to do. ECF 47. The Government informed the Court on December 16 of its withdrawal of the requests for identified patient information. *Id*.

On December 24, 2025, the Court issued an order quashing requests 11-13 as to unredacted records and finding standing on a "zone of interests" theory. ECF 52. The Court also granted the Government's Motion to Allow Supplemental Briefing and invited the parties to provide additional briefing on the question of de-identified patient records, "as envisioned in the government's Motion (Doc. 47) to supplement." *Id*. In a conference after the Court's December 24 order, UPMC counsel and the Government discussed the de-identification of material that could be produced pursuant to the outstanding requests in the subpoena. UPMC promised to de-identify any material provided to the Government, and that it would follow the specific HIPAA regulations that govern how a medical provider should de-identify patient records so that dissemination of such records would not implicate HIPAA privacy provisions.

**ARGUMENT**

1. **The Plaintiffs Lack Standing and the Suit Is Moot**

The agreement between UPMC and the Government concerning the production of de-identified patient records deprives plaintiffs of any Article III standing they may have had, and this lawsuit should be dismissed as moot.

"It is axiomatic that standing to sue is a prerequisite to Article III jurisdiction." *Kerchner v. Obama*, 612 F.3d 204, 207 (3d Cir. 2010). The constitutional requirement of standing requires that a plaintiff have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The plaintiff "bears the burden of establishing these elements." *Id*. "An injury in fact is an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Berg v. Obama*, 586 F.3d 234, 239 (3d Cir. 2009).

Article III "requires that a plaintiff's claim be live not just when he first brings the suit but throughout the entire litigation." *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992); *see Spencer v. Kemna*, 523 U.S. 1, 7 (1998) ("[T]hroughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." (quotation omitted)). A case is moot when "there is no longer a live controversy." *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020). "For a case to be moot in the Article III sense, all plaintiffs who once had Article III standing must have lost it, and none of the recognized exceptions to mootness"—as relevant here, voluntary cessation and conduct capable of repetition yet evading review—"can apply." *Gulden v. Exxon Mobil Corp.*, 119 F.4th 299, 305 (3d Cir. 2024). Plaintiffs no longer have

standing and neither exception to mootness applies, meaning that this case is no longer justiciable.

### A. Plaintiffs Lack Standing

The Government's agreement with UPMC deprives plaintiffs of standing. The de-identification of medical records has legal significance; the vast weight of authority recognizes that patients do not have legally cognizable privacy interests in de-identified medical records. *In re NHL Players' Concussion Injury Litig.*, 120 F. Supp. 3d 942, 955 (D. Minn. 2015) ("Once the identifying information is removed from the record, the patient's privacy interest is essentially eliminated.") (collecting cases); *United States ex rel. Roberts v. QHG of Ind., Inc.*, 1998 U.S. Dist. LEXIS 23512, at *29-30 (N.D. Ind. Oct. 8, 1998) ("[T]he privacy interests of a patient in his or her medical records is tied to identity information contained in the records").

HIPAA regulations and HHS guidance describe in extreme detail what information must be redacted before a medical record can be shared without violating HIPAA. *See* 45 C.F.R. § 164.502(d); HHS OCR, "Guidance Regarding Methods for De-identification of Protected Health Information in Accordance with [HIPAA]" (Nov. 26, 2012) (attached as Ex. A). Veteran counsel for UPMC—who has extensive experience in healthcare investigations—has represented that UPMC will diligently perform this de-identification.[1]

The plaintiffs' privacy interest in a *de-identified* medical record is—by definition—not "concrete and particularized." *See Berg v. Obama*, 586 F.3d 234, 239 (3d Cir. 2009). Because the record is de-identified under the relevant HIPAA regulation and could legally—after de-

---

[1] The States' assertions in their amicus brief (filed today) that patient records cannot actually be de-identified is belied by federal law, 45 C.F.R. § 164.502(d), and by the rigorous methods discussed in Exhibit A. The States also base this argument on facially incorrect and fact-free assertions that the Government is asking for a simple redaction of "name, address, [and] Social Security number." ECF 55-1 at 13.

identification—be shared with *anyone*, there is no cognizable injury. *See* Ex. A at 29 ("The Privacy Rule does not limit how a covered entity may disclose information that has been de-identified."). There is also no way for any third party to reliably identify whether a concrete or particularized injury has even occurred, and the plaintiffs' claims therefore become a "generalized grievance" about the fact that a de-identified record somewhere, possibly related to them, has been disclosed to someone who is unable to determine to whom the record relates. *See Carney v. Adams*, 592 U.S. 53, 60 (2020) (recognizing that a "generalized grievance" is insufficient for purposes of Article III standing). This is simply insufficient as a matter of law to support standing because it is not recognized by the law as a cognizable privacy interest.[2] *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 180 (3d Cir. 2005) ("The cases in which a disclosure-based privacy violation has been found involve situations where there was either actual identification or the disclosure of identifying information such as would allow the individual to be identified and ultimately connected to his or her private information."); *Dinerstein v. Google, LLC*, 73 F.4th 502, 513 (7th Cir. 2023) (discussing modern Article III jurisprudence and stating that "the dissemination of anonymized [medical] information" likely did not "give rise to any injury at all—let alone one concrete enough to support Article III standing").

---

[2] *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004), is not to the contrary. First, that case does not present the standing question here because the subpoena recipient hospital there challenged the trial subpoena at issue and clearly had standing to do so. Second, Judge Posner apparently mistook what de-identifying a medical record entails, because the example he gave—of a photograph of a naked patient—would not pass the HIPAA de-identification test. Ex. A at 8 (requiring removal of "full-face photographs and any comparable images"). Finally, the irony of plaintiffs citing *Northwestern Memorial Hospital* would be that Judge Posner stated in dicta that HIPAA subpoenas appear to "override the HIPAA regulations," meaning that Judge Posner believed the Government would have been able to obtain the challenged records in that case via the exact type of subpoena at issue here. 362 F.3d at 925.

Furthermore, the harm from the disclosure of a de-identified record is entirely conjectural and hypothetical, because a de-identified record does not invade any specific patient's zone of privacy, and a generalized preference that a de-identified record not be produced is simply not enough to support standing. If anyone who prefers that a document that is meaningful to them in the hands of a third party not be produced to the Government has standing to sue the Government to prevent disclosure, virtually any law enforcement subpoena could be easily overcome. That is simply not what black-letter law says about administrative subpoenas, which are supposed to allow broad disclosure akin to a grand jury subpoena. *In re Grand Jury Proceedings*, 486 F.2d 85, 90 (3d Cir. 1973) ("[A]n administrative subpoena and a grand jury subpoena perform[] essentially the same function[.]"). And as the Fourth Circuit has noted in a case involving a HIPAA subpoena like the one at issue here, the disclosure of some amount of patient information is simply part of our modern system of medicine for multiple reasons, including the fact that (as here) patients apparently agreed to have their medical records released to insurance companies and others.[3] *United States v. Bailey (In re Subpoena Duces Tecum)*, 228 F.3d 341, 351 (4th Cir. 2000); Ex. B.

Just as plaintiffs have proceeded anonymously in this Court to protect their privacy, their privacy interests are similarly safeguarded by the Government's concession that it will not obtain any identifying health information of any patients at UPMC pursuant to this subpoena, let alone any PHI of the four anonymous plaintiffs. Because nothing produced under the subpoena will implicate any patients' specific privacy interest, the anonymous plaintiffs lack an injury-in-fact

---

[3] UPMC documents suggest that UPMC patients—which would include plaintiffs—understand and consent in some form to their *identified* medical records being shared with, among others, the Government via a subpoena—as well as with a list of about a dozen other types of entities. *See* Notice of Privacy Practices (Ex. B); Patient Agreement (Ex. C).

sufficient to support standing to file a suit against the United States and to challenge a duly authorized subpoena that the subpoena recipient itself has not challenged. Lastly, to the extent that plaintiffs claim that even de-identified patient records could somehow nevertheless betray their identity due to the nature of the treatment provided, such "argument rests on [] highly speculative fear" that "does not satisfy the requirement that threatened injury must be certainly impending." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

### B.  The Case Is Moot

"In light of [plaintiffs'] current lack of Article III standing, this case is moot [because] no exception to a dismissal on mootness grounds applies." *Gulden*, 119 F.4th at 308.  There are two possible exceptions to dismissal: voluntary-cessation and capable-of-repetition-yet-evading-review. The voluntary-cessation exception ensures that a defendant is unable to "suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024).  The exception does not apply here because, under the agreement with UPMC, the Government does not "remain[] 'free to return to [its] old ways.'" *Id.* (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)).  In other words, because UPMC will provide only de-identified documents, the Government's "challenged conduct" will not, and cannot, resume "as soon as the case is dismissed." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012). The Government has no "plan[s] to reinstate" its request for identified patient records in the future and cannot "reasonably be expected to engage in the challenged behavior again." *Hartnett*, 963 F.3d at 306; *see Fikre*, 601 U.S. at 241 ("[O]ur precedents hold [that] a defendant's voluntary cessation of a challenged practice will moot a case only if the defendant can show that the practice cannot reasonably be

expected to recur." (quotation omitted)). Therefore, the voluntary-cessation exception does not apply.

The "capable-of-repetition-yet-evading-review exception does not apply here either." *Gulden*, 119 F.4th at 309. This is because there is no "reasonable expectation" or "demonstrated probability" that the "*same* controversy will recur involving the *same* complaining party." *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 463 (2007); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) ("[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality."). Because of the Government's agreement with UPMC, among other things, the four anonymous plaintiffs cannot demonstrate that the Government will again seek their identifying information via a HIPAA subpoena. This is not an "exceptional" situation; the exception does not apply.

Because of the agreement to accept de-identified records and information deprived plaintiffs of any Article III standing they may have had, this case was moot before the Court entered its prior order. The Court should therefore vacate its prior order and dismiss the case for lack of jurisdiction.

    **2. These Plaintiffs Do Not Have Standing to Assert the Rights of Other Patients or Seek Full Quashal**

To the extent the Court finds that this case is not moot or performs a *Westinghouse* balancing test in any forthcoming order, the Court should limit such relief to the four plaintiffs in this action. Although this issue was in the Government's opening brief, the Court did not address it in the December 24 order. However, the agreement with UPMC further cements what was already clear: these four anonymous plaintiffs—to the extent they have standing to do anything at all—do not have standing to prevent UPMC from disclosing *other patients'* de-identified

records. *California v. Texas*, 593 U.S. 659, 672 (2021) (stating that remedies "operate with respect to specific parties"); *Curry v. United States*, 192 F.2d 571, 572 (5th Cir. 1951) ("[A plaintiff] can not vicariously assert the constitutional rights of others who do not complain."). Even accepting the incorrect notion that these four patients could somehow assert the legal rights of hundreds or thousands of other patients as to unredacted records, that right becomes nonsensical when applied to de-identified records of other patients that could legally be shared with anyone.

Also, even if the Court concludes the case remains justiciable, it should, at the least, limit the scope of its order to identified patient records. This is only relief necessary to redress the stated privacy injury, and federal courts are powerless to provide anything more. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."). To the extent that the plaintiffs contend UPMC could make redaction mistakes while de-identifying their records, the Government's proposed order allows UPMC to share the de-identified records of the four plaintiffs privately with those patients in a reasonable, time-limited procedure where they can identify any redaction concerns prior to the records being turned over to the Government.

3. **Even if Plaintiffs Have Marginal Standing, the *Westinghouse* Test Now Strongly Favors the Government**

Should the Court still determine that these four plaintiffs do have standing as to their own de-identified medical records, their *Westinghouse*-based arguments now fall flat, and the Court should require the production of de-identified records and information. First, even accepting the incorrect idea that *Westinghouse* applies to the Government's original HIPAA subpoena issued pursuant to 18 U.S.C. § 3486—a statute that Congress passed 16 years after *Westinghouse* to allow the Government to obtain medical records in order to investigate federal healthcare

offenses, as it is attempting to do here—*Westinghouse* should not apply at all to a request for de-identified patient records, because a de-identified record does not raise any of the privacy concerns that animated *Westinghouse* in the first place.

Moreover, this Court is not writing on a blank slate here, because the Third Circuit, in a published opinion, has already rejected a *Westinghouse*-based privacy challenge to the disclosure of very sensitive but anonymized information related to minors. In *C.N. v. Ridgewood Board. of Education*, a school district asked high-school students to take an anonymous survey on sensitive topics such as drug use and sexual activity, and then released the results of the survey to the public. 430 F.3d at 161-64. Parents sued under a number of constitutional and federal statutory privacy theories. *Id*. Applying *Westinghouse* balancing, the Third Circuit rejected the challenges to the release of the information and found that the effective anonymization of the survey responses lessened the plaintiff's showing on "the privacy side of the balance"—which the court described as "the first five factors" of the *Westinghouse* test—to the extent that the disclosure was permissible under *Westinghouse*. *Id*. at 180-82. So too here.

The seven *Westinghouse* factors are: (1) the type of record requested; (2) the information it does or might contain; (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in which the record was generated; (5) the adequacy of safeguards to prevent unauthorized disclosure; (6) the degree of need for access; and (7) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest favoring access. *Doe v. SEPTA*, 72 F.3d 1133, 1140 (3d Cir. 1995).

Under the first three *Westinghouse* factors, and as described in an analogous situation in the district court opinion that the Third Circuit affirmed in *C.N.*, the nature of a de-identified medical record is simply not the same as an unredacted record and does not raise the same

privacy concerns. *C.N. v. Ridgewood Bd. of Educ.*, 319 F. Supp. 2d 483, 495 (D.N.J. 2004) ("[A]s already discussed there was no actual disclosure, at least in such a form that could produce harm in an individual."). The overwhelming weight of authority recognizes that patients' privacy interests are tied to personally identifiable information contained in medical records—which renders factors one, two, and three strongly to favor the Government.

Specifically on factor one, the "type of record" now requested is a fully de-identified record over which numerous courts have recognized there are no patient privacy interests at all and that can be shared with anyone. On factor two, the information the record might contain is de-identified medical procedure documentation that cannot be traced to an individual patient. As to factor three, the HIPAA regulations themselves—through requiring providers to redact the exact same personal information that will be redacted here—reflect that the disclosure of de-identified medical records do not cause the type of privacy harm that *Westinghouse* recognized.

On factor four, which is the harm to the relationship between the patients and UPMC, there are three facts that favor the Government despite the patients' anticipated concerns about disclosure. First, UPMC has ceased providing puberty-blocker medications, cross-sex hormones, and surgeries for minors with gender dysphoria, meaning that there will be no harm to any ongoing relationship between the patients and UPMC related to the care at issue. Second, UPMC patients apparently agreed that UPMC could share medical records in response to subpoenas, as noted above and in the attached Exhibits. And third, due to the fact that de-identified medical records have no HIPAA protection and there is no legal impediment to sharing them, also as described above, the patients' subjective concerns about their relationship with UPMC providers are not objectively reasonable—because de-identified medical records are

shared by healthcare providers on a regular basis for a variety of purposes. *Bailey*, 228 F.3d 341 at 351.

Factor five, which is the risk of "inadvertent disclosure," also strongly weighs in favor of the government here, because after a HIPAA-compliant redaction to a patient record, UPMC would be legally permitted to disclose the de-identified record without any HIPAA constraints. It is hard to understand how the Government—which is under a legal obligation to maintain the privacy of the patient information it obtains via these subpoenas, 18 U.S.C. § 3486(e)—could be faulted for the theoretical possibility of a leak when the record could be publicly disclosed without running afoul of the law.

On factor six, which considers "the need for access," this subpoena was issued as part of an investigation into *health care providers* and *pharmaceutical companies* promoting and getting paid for controversial, potentially life-altering *drugs* and *surgeries*—care that has been banned or curtailed in multiple Western European countries as ineffective and potentially harmful. The Government simply cannot investigate whether an expensive, name-brand, FDA-regulated pharmaceutical was misbranded when delivered to a patient—which can happen, among other things, when the drug is promoted by a pharmaceutical company for an off-label use—without looking at the circumstances under which the expensive, name-brand, FDA-regulated pharmaceutical was delivered to the patient. The idea that the federal government is not permitted to investigate what happened to (anonymous) patients who received adulterated or misbranded FDA-regulated pharmaceuticals—simply because there is sustained political opposition to this investigation—is incorrect. The Government has a need for these materials to continue a lawful investigation that has been ordered by the Attorney General of the United States. And finally, on factor seven, the subpoena was issued pursuant to an express statutory

mandate allowing such healthcare investigations, as described in the Government's opening brief.

## CONCLUSION

Because this action is now moot, the Court should dismiss it for lack of jurisdiction. In its dismissal order, the Court should make clear that UPMC is permitted to comply with all specifications of the subpoena in full as long as all patient information provided is de-identified pursuant to the relevant HIPAA de-identification procedures.

Dated this 16th day of January, 2026.

Respectfully submitted,

**FOR THE UNITED STATES OF AMERICA**

BRETT SHUMATE
Assistant Attorney General
JORDAN C. CAMPBELL
Deputy Assistant Attorney General

LISA K. HSIAO
Acting Director

 /s/ Patrick R. Runkle
ROSS S. GOLDSTEIN
PATRICK R. RUNKLE
Assistant Directors
SCOTT B. DAHLQUIST
Trial Attorney

United States Department of Justice
Enforcement and Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044
Tel:    202-532-4723
Fax:    202-514-8742
patrick.r.runkle@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2026, I served the foregoing Supplemental Brief via ECF to counsel of record.

Dated this 16th day of January 2026.

                                                    */s/ Patrick Runkle*
                                                    PATRICK RUNKLE